UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

VS. C.R. No:05-73T

VIRGILIO JIMINEZ

**MOTION TO SUPPRESS**

NOW COMES Defendant, VIRGILIO JIMENEZ, and moves to suppress all physical evidence seized by the Cranston Police Department in connection with this case, including the quantity of suspected cocaine base specified in the Indictment.

In support of this Motion, Defendant incorporates, by reference, the attached Memorandum of Law in Support of Motion to Suppress.

Respectfully submitted,
VIRGILIO JIMINEZ
By his attorney

DONNA A. UHLMANN
1 Davol Square, Suite 100
Providence, RI 02903
(401) 421-9700

**CERTIFICATION**

I hereby certify that a copy of the within was hand-delivered to Stephen Danbruch, AUS, on the 7th day of September, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

VS. C.R. 05-73T

VIRGILIO JIMINEZ

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

A search warrant was issued by the Rhode Island District Court on June 2, 2005 based upon an Affidavit submitted to the issuing judge by Detective Russell Henry of the Cranston Police Department. Henry averred that a source gave him information that a subject known as "VJ" resided at 9/11 West Harry Street, Cranston, was involved in the sale and distribution of cocaine. According to the Affidavit, this source had given reliable information in the past and had been present at the apartment when "VJ" made sales of cocaine. "VJ" was described as Dominican, heavy, dark, about 5'6" to 5'8" tall with short dark hair and was approximately twenty-five to thirty-five years old. The source alleged that "VJ" packaged and sold cocaine from that location. The informant identified the address, the right side of the duplex, number 9, and stated that there was video surveillance equipment present.

The Cranston Police seized garbage located outside the house and discovered mail addressed to that address, four empty baggies with cut corners, a small plastic bag containing a white powdery substance and a small blue plastic bag among the trash. A subsequent field test of the contents of the baggie was positive for cocaine. Detective

Henry declared in his Affidavit that the empty plastic bags were "cut-offs", commonly used to package illegal substances. During a surveillance of the address, Henry observed a person he claims matched the physical description of "VJ" given by the source, leave the residence several times in a black Oldsmobile registered to an "unknown female." He also noted the presence of a surveillance camera mounted on the outside of the house.

Based solely on the above information, Henry swore in his Affidavit that he had reason to believe that "VJ" was packaging and distributing cocaine from 9 West Harry Street, Cranston, Rhode Island.

Prior to executing the search warrant, officers observed a person leave the address in a white Jeep vehicle. A patrol office was instructed by detectives to stop the vehicle on the grounds that the registration had been suspended for violating automobile inspection laws. The driver, who was accompanied by a three year old male, presented the officers with a Rhode Island driver's license in the name of Moises Reyes with a date of birth of November 3, 1979. According to the police officer, Reyes was "Mirandized" at the scene of the stop and stated that his cousin Leo lived at 9 West Harry Street and he had no knowledge of any drugs being sold. A woman, identifying herself as the child's mother, was at the address and identified Mr. Reyes as the father, whom she called Leo. She left the scene with the child. The landlord of the duplex allegedly stated to police that the person in custody was known to him as "Leo" and he rented one-half of the duplex from him. Reyes was then placed under arrest for obstructing a police officer.

The police searched 9 West Harry Street and seized from the kitchen closet a can of Carpet Fresh containing approximately forty-two grams of suspected cocaine base,

which tested positive after a field test was conducted later at the police stations. Paperwork in various names, a Tanita scale and other items were seized.

Defendant signed a Miranda rights form while in custody a the Cranston Police station and although not indicated in any police statements, Officer Karl Jacobson testified before the Federal Grand Jury that Defendant related who he bought cocaine from, how often he bought it and the manner in which manufactured and sold it.

**INSUFFICIENT PROBABLE CAUSE WAS PRESENTED IN THE AFFIDAVIT TO OBTAIN THE SEARCH WARRANT**

The Fourth Amendment to the United States Constitution guarantees that all persons are to be free from unreasonable searches and seizures and that any warrant issued for a search must be based upon probable cause. Payton v. New York, 445 U.S. 573 (1980). The probable cause requirement is rigorously adhered to by the United States Supreme Court. Aizona v.Hicks, 480 U.S. 321 (1987)

The "totality of circumstances" to demonstrate probable cause is assessed by the Courts to determine the sufficiency of the affidavit in support of the search warrant request. Illinois v. Gates, 462 U.S. (1983). Included in this assessment is the veracity and reliability of the confidential informant together with her/his basis of knowledge. Gates, 462 U.S. at 230. The First Circuit Court of Appeals in United States v. Zavas-Diaz, 95 F.3d 105 (1st Cir. 1996) identified factors that may contribute to probable cause. Some factors identified by the Court are whether the affidavit supports the veracity of basis of knowledge of informant, whether the hearsay statements of the informants are

self-authenticating, whether they were corroborated by other means, e.g. police surveillance, and whether the officer/affiant professionally assessed this information from the source. Zavas –Diaz, 95 F.3d at 111.

The affidavit in the instant case shows stale information from the informant, a cursory surveillance which did not uncover the usual signs of drug trafficking, e.g. constant movement of persons in and out of the residence, and a "trash pull" which revealed "baggies" and suspected cocaine within, but no indication as to the owner of the trash or how long it had been sitting on the curb. Clearly, the "totality of circumstance" outlined in the affidavit do not establish probable cause.

For the foregoing reasons, Virgilio Jiminez moves that any and all evidence be suppressed.

Respectfully Submitted,
VIRGILIO JIMINEZ
By his attorney

DONNA A. UHLMANN
1 Davol Square, Suite 100
Providence, RI 02903
(401) 421-9700

**CERTIFICATION**

Undersigned hereby certifies that a copy of the within Memorandum was hand-delivered to Stephen Danbruch, AUA, on the 7th day of September, 2005.

______________________