**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Cr. No. 05-073T** |
| | ) | |
| **VIRGILIO JIMINEZ** | ) | |

**GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS**

Now comes the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Stephen G. Dambruch, Assistant United States Attorney, and hereby objects to defendant's Motion to Suppress all physical evidence seized by the Cranston Police Department in connection with this case. The grounds for the government's objection are set forth in the accompanying memorandum of law.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

STEPHEN G. DAMBRUCH
Assistant U. S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2005, a copy of the within Government's Objection was sent by facsimile transmission to Donna A. Uhlmann, Attorney at Law, 1 Davol Square, Providence, Rhode Island 02903 (fax no. 401-351-7847).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 05-073T** |
| | : | |
| **VIRGILIO JIMINEZ** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS**

## INTRODUCTION

The defendant contends that the Court should suppress "all physical evidence seized by the Cranston Police Department in connection with this case." In support of his motion, the defendant attacks both the propriety and sufficiency of the information contained in the search warrant affidavit, as well as the legality of the motor vehicle stop and detention of the defendant. The defendant's arguments are without merit.

## FACTS

Cranston Police Detective Sergeant Russell Henry submitted an application for a search warrant to Rhode Island District Court Judge Michael Higgins on June 2, 2005. That application, supported by an affidavit, sought the issuance of a search warrant for the defendant's residence located at 9 West Harry Street, Cranston, Rhode Island. The affidavit, a copy of which is attached, contained information from various sources about the

defendant's narcotics trafficking activities. Those sources included information from a previously reliable confidential informant, police surveillance and evidence seized by the police during a search of the trash from the target residence. After reviewing the application and affidavit, Judge Higgins signed and issued the requested warrant that same day, authorizing its execution in the nighttime.

Members of the Cranston Police Department and the Drug Enforcement Administration subsequently executed the warrant at the defendant's residence. During a search of the premises, Cranston Police Detective Paul Saccoccia seized paperwork, cans with false bottoms, a digital scale, packaging materials, suspected crack cocaine, video surveillance equipment, and various other items. As a result of those seizures, the police charged the defendant with possession of a controlled substance with intent to distribute.

## ARGUMENT

A. The Search of the Defendant's Residence

When reviewing a neutral magistrate's decision to issue a search warrant, the reviewing court must accord considerable deference to the issuing magistrate's probable cause determination. United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996). The standard to be applied when evaluating the

sufficiency of a search warrant affidavit is whether the totality of the circumstances stated in that affidavit, interpreted in a common-sense rather than hyper technical manner, demonstrate probable cause to search the premises. United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997); United States v. Jewell, 60 F.3d 20, 22 (1st Cir. 1995). Probability, not proof beyond a reasonable doubt, is the touchstone of the probable cause determination. United States v. Aguirre, 839 F.2d 854, 857 (1st Cir. 1988). Therefore, the search warrant affidavit must only provide the issuing magistrate with a substantial basis upon which to conclude that there is a fair probability that contraband or evidence of a crime will be found at a particular place. Illinois v. Gates, 462 U.S. 213, 238-39 (1983).

Where, as here, the affidavit relies on a report from a confidential informant, it must provide some information upon which the issuing magistrate can assess the credibility of that informant information. United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002). That assessment should be based upon the consideration of several factors, including the probable veracity of the informant, the informant's basis of knowledge, and the existence of any corroboration. Khounsavanh, 113 F.3d at 284.

With regard to the probable veracity of the informant, Detective Sergeant Henry stated in his affidavit that his confidential source had "provided reliable information in the

past." Although he did not set forth the basis for that belief, such an assertion is still entitled to some weight, however slight. Barnard, 299 F.3d at 93. Furthermore, the fact that this confidential source was known to Detective Sergeant Henry, and not an anonymous tipster, provides an additional assurance of reliability since and he/she could be held responsible if his/her assertions proved to be false. Florida v. J.L., 529 U.S. 266, 270 (2000).

The credibility of Detective Sergeant Henry's confidential source is further enhanced by the fact that the information he/she provided was derived from his/her own personal observations. United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993). The affidavit specifically states that the confidential source told Detective Sergeant Henry that he/she had been to the target residence and witnessed an individual actually selling cocaine at that location. Additionally, the confidential source provided a detailed description of the person he/she observed distributing the cocaine and pointed out the residence to the police. The confidential source also alerted Sergeant Henry to the presence of a video surveillance equipment at the residence, a fact corroborated by Detective Sergeant Henry's own observation of a video surveillance camera mounted on the outside of the residence.

The corroboration of the informant's information was not,

however, limited to the confirmation of the presence of the video camera. During police surveillance of the target premises, Detective Sergeant Henry observed an individual matching the description provided by the confidential source leaving the residence on several occasions. Furthermore, the investigating officers corroborated the informant's information relating to the presence of cocaine at the target premises by seizing the remains of packaging materials commonly used of narcotics distributors and cocaine residue from the trash, just one day before Detective Sergeant Henry applied for and the police executed the warrant.

The existence and inclusion of this amount of corroborative information weighs heavily in favor of finding that the confidential source met, if not exceeded, the requisite reliability standard. Especially when that corroboration need only be sufficient to reduce, not wholly eliminate, the probability that the informer is either lying or inaccurate. Khounsavanh, 113 F.3d at 284.

The bottom line is that when examined from a practical, common sense perspective, the combination of all of the information contained within the affidavit, clearly demonstrates a fair probability that contraband would be found within the defendant's residence. Therefore, the warrant is valid and the seizures resulting from its execution should be admissible against the defendant at trial.

Even if the Court determines that the affidavit did not establish sufficient probable cause to authorize the issuance of the search warrant, the evidence seized from the defendant's residence is admissible pursuant to "the good faith exception." United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under that exception, the exclusionary rule does not apply when an officer acts in good faith to obtain a warrant that is later deemed to be insufficient by a reviewing court. United States v. Capozzi, 347 F.3d 327, 332 (1st Cir. 2003). Furthermore, the government is not deprived of the benefits of "the good faith exception" by mere negligence or inattention to detail in the preparation of the search warrant affidavit. United States v. Brunette, 256 F.3d 14, 20 (1st Cir. 2001); United States v. Owens, 167 F.3d 739, 745 (1st Cir. 1999).

B. The Stop and Detention of the Defendant

As well as challenging the sufficiency of the search warrant affidavit, the defendant also argues that the stop of his motor vehicle and the detention that followed were unlawful. The government's first response to this claim is that since the police did not seize any physical evidence as a result of the stop or the detention, the Court need not even address the issue in relation to its consideration of the defendant's motion to suppress. If, however, the Court does decide to examine this issue, it is the government's position that the police lawfully

stopped and detained the defendant contemporaneous with the execution of the search warrant.

The stop of the defendant's Jeep was justified by the fact that the police knew that the vehicle's registration was suspended at the time. Such a decision to stop an automobile is always reasonable where, as here, the police have probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 809 (1996). This rule applies regardless of the actual subjective motivations of the individual officers involved in that stop. Id at 813.

Of course, in the instant case, the officers also could have justified both the stop and the subsequent detention on reasonable suspicion or probable cause to believe that the defendant had engaged in other criminal activity, that is, the possession and/or distribution of cocaine. The combination of the information contained in the search warrant affidavit and the observation of the defendant leaving from the target location just moments before the police executed the warrant are at least sufficient to provide the police with the requisite reasonable and articulable suspicion, and more likely establish probable cause to justify an arrest.

Probable cause for a warrantless arrest exists if the collective knowledge of the officers involved was sufficient to lead a prudent person to believe that the defendant was

committing or had committed an offense. United States v. Link, 238 F.3d 106, 109 (1st Cir. 2001). Probability, not proof beyond a reasonable doubt, is the touchstone of the probable cause determination. United States v. Aguirre, 839 F.2d 854, 857 (1st Cir. 1988). The focus is on the likelihood, not certitude, of criminal activity. Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004). Thus, the officer's conclusion need not be ironclad, nor even highly probable. United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999). Rather, the arrest is justified if the circumstances known at the time support the officer's reasonable belief that the action taken was appropriate. Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997).

In the alternative, pursuant to Terry v. Ohio, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." United States v. Trueber, 238 F.3d 79, 91 (1st Cir. 2001) (quoting Terry, 398 U.S. 1, 22 (1968) (internal quotations and citations omitted)). The officer may "stop and briefly detain the person for investigative purposes, and diligently pursue a means of investigation likely to confirm or dispel [his] suspicions quickly." Id. These "investigatory powers include stopping motor vehicles upon reasonable suspicion." United States v. Taylor, 162 F.3d 12, 18 (1st Cir. 1998) (citing

Michigan v. Long, 463 U.S. 1032, 1049 (1983)). The validity of such Terry stops is governed by a two prong test: "whether the officer's actions were justified at their inception, and, if so, whether the actions taken by the officers following the stop were reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officers during the stop." Taylor, 162 F.3d at 18; United States v. Jackson, 918 F.2d 236, 238-39 (1st Cir. 1990).

To satisfy the test's first prong, "'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" Taylor, 162 F.3d at 17 (quoting United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994)) (quoting Terry, 392 U.S. at 21). Put another way, "[w]arrantless investigatory stops are allowable if, and to the extent that, police officers have a reasonable suspicion of wrongdoing - a suspicion that finds expression in specific, articulable reasons for believing that a person may be connected to the commission of a particular crime." United States v. Lee, 317 F.3d 26, 31 (1st Cir.) (citing Terry, 392 U.S. at 21), cert. denied, 538 U.S. 1048 (2003).

As noted above, the second prong of the Terry test requires a showing that "'the action taken [by police] was reasonably related in scope to the circumstances which justified the

interference in the first place.'" Taylor, 162 F.3d at 20 (quoting Terry, 392 U.S. at 20). Whether this standard is met "requires a fact specific inquiry into whether the measures used were reasonable in light of the circumstances that prompted the stop or that developed during its course." United States v. Acosta-Colon, 157 F.3d 9, 15 (1st Cir. 1998).

Here, the initial detention of the defendant was limited in scope and duration. The officers briefly questioned the defendant about his identity at the scene of the motor vehicle stop and then offered he and his young son transportation back to 9 West Harry Street. The defendant accepted that offer and once back at the West Harry Street location was identified by the mother of his child and his landlord as the resident of the dwelling where the police now had discovered a substantial quantity of suspected crack cocaine and other related drug paraphernalia. The police also learned at that time that the defendant was using multiple names, two of which matched up with paperwork found inside of 9 West Harry Street, and had lied about his connection to the residence. The fruits of the search, the positive identifications of the defendant as the resident of the target apartment, and the defendant's false exculpatory statements only supported and strengthened the officers' reasonable suspicions, thereby justifying their continued detention of the defendant. Lee, 317 F.3d at 31.

**CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Honorable Court deny the defendant's Motion to Suppress.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on the 14th day of September, 2005, a copy of the within Government's Memorandum was sent by facsimile transmission to Donna A. Uhlmann, Attorney at Law, 1 Davol Square, Providence, Rhode Island 02903 (fax no. 401-351-7847).

# AFFIDAVIT

**Your affiant upon oath states that he has reason to believe and does believe that grounds for such warrant exist and states the following facts on which such belief is founded on the following affidavit.**

I, Detective Sergeant Russell Henry, a member of the Cranston Police Department for the last twelve years, under oath, depose and say:

Several weeks ago, I received information from a confidential source (CS), who has provided reliable information in the past, regarding a subject known to the CS as "VJ", whom the CS knows to be involved in the sale/distribution of large quantities of cocaine. The CS states that he/she has been at the residence and has witnessed "VJ" make sales of cocaine from the house. The CS describes "VJ" as a Dominican male, dark skin, short dark hair, heavy build, about 5'6" to 5'8" tall, about twenty-five to thirty-five years old. "VJ" allegedly packages and distributes quantities of cocaine from his apartment in Cranston. The CS pointed out "VJ's" residence, which was found to be 9/11 West Harry Street, Cranston, which is a duplex style home. The source pointed out the right side of the duplex, #9, as being where "VJ" lives. The CS also states that "VJ" has video surveillance equipment installed in the home to "protect him from the police".

Based upon this information, I initiated an investigation on the above referenced location and individual. On 6/1/2005 members of the Cranston Police Special Investigations Unit conducted a trash pull at 9 West Harry Street; a subsequent search of the contents led to the seizure of mail addressed to that residence, four empty sandwich baggies which had been twisted and the corners cut off, a small plastic bag with a white powdery substance in it, and a small blue plastic bag commonly used for packaging illegal drugs. From my training and experience I recognized the remnants of these empty plastic bags as what would result from "cut offs", which are commonly used for packaging various forms of cocaine. The plastic bag which contained the white powder was field tested for cocaine and did give a positive result. Since the investigation began, I have conducted surveillance of the residence and have observed a subject matching the physical description given by the CS leaving the residence several times in a black Oldsmobile, which is registered to an unknown female subject. While conducting surveillance I have also confirmed that there is a surveillance camera mounted on the front of the house.

Based upon the aforementioned facts, your affiant has reason to believe and does believe that "VJ", AKA John Doe, is packaging and distributing cocaine from 9 West Harry Street, Cranston, Rhode Island and for the reasons stated, I am requesting a search be granted for 9 West Harry Street and the person of John Doe.

Additionally, because "VJ", AKA John Doe, has video surveillance equipment installed outside the home to "protect him from the police", your affiant is requesting that the search warrant that may be executed in the nighttime so that officers may use the cover of darkness for safety and to prevent the destruction of evidence.

June 2, 2005
Date

Det Sgt Russell Henry
Detective Sergeant Russell Henry
Affiant

Providence Sc, In Providence this 2nd day of June 2005, before me personally came Detective Sergeant Russell Henry and made oath to the truth of the foregoing.

Judge/Magistrate of the District Court
Justice of the Supreme / Superior Court